UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| KENDRICK L. BUGG, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 1:05-CV-316 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM**

This matter comes before the Court on the motion of *pro se* petitioner Kendrick L. Bugg ("Petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Court File No. 1, "Petition"). Petitioner filed a memorandum in support of his Petition (Court File No. 1, "Petitioner's memorandum"). Pursuant to the Court's Order (Court File No. 3), the Government filed a response to Petitioner's motion (Court File No. 4, "Government's Response"). Petitioner then requested to file a traverse to the Government's response (Court File No. 5) and the Court granted Petitioner's request (Court File No. 6).[1] The Court finds the materials thus submitted, together with the complete record of the underlying criminal case,[2] conclusively show Petitioner is not entitled to relief on the claims asserted in his Petition. Accordingly, the Court will decide those

---

[1] The Court gave Petitioner until March 17, 2006 to file a traverse, but Petitioner never filed a traverse.

[2] In accordance with Rule 4(b) of the Rules Governing Section 2255 Proceedings, the Court has considered all of the pleadings and filings in Petitioners § 2255 motion, which will be cited by the Court File Number assigned to the particular pleading or motion (*e.g.*, "Court File No. 1"), and all the files, records, transcripts, and correspondence relating to Petitioner's conviction in Criminal Docket No. 1:02-CR-72, which will be referred to by the Court File Number assigned to the particular matter in the underlying criminal case (*e.g.*, "Crim. Court File No. 1").

matters without an evidentiary hearing, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir.), *cert. denied*, 508 U.S. 943, 113 S. Ct. 2423, 124 L. Ed. 2d 644 (1993), and will **DENY** Petitioner's motion for the reasons stated herein.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

On June 25, 2002, the Grand Jury returned a five-count Superceding Indictment against Petitioner and co-defendant David Shropshire ("Shropshire").[3] (Crim. Court File No. 18). Count One charged Petitioner with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g); Count Three charged Petitioner with a Hobbs Act robbery offense in violation of 18 U.S.C. § 1951. Counts Four and Five each charged Petitioner with brandishing a firearm in furtherance of the robbery in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (*Id.*). At the conclusion of a four day jury trial before the Court, the jury found Petitioner guilty on Counts One, Three, Four and Five of the Superseding Indictment. (Crim. Court File No. 88). On April 4, 2003, the Court sentenced Petitioner to 324 months of imprisonment, which included 120 months on Count One and 240 months on Count Three to be served concurrently and 84 months on each of Counts Four and Five to be served concurrently and consecutively to Counts One and Three. (Crim. Court File No. 103, Judgment).

On appeal, the United States Court of Appeals for the Sixth Circuit (the "Sixth Circuit") affirmed Petitioner's convictions and sentence on June 29, 2004. *United States v. Bugg*, 105 Fed. Appx. 25, 27, 2004 WL 1491643 (6th Cir. June 29, 2004), *cert. denied*, 543 U.S. 975 (November 1, 2004). The underlying facts presented at trial, summarized by the Sixth Circuit, are as follows:

> In March 2002, two black men with firearms robbed a store owner at his Gas-N-Go.

---

[3] Count Two was charged against Shropshire only.

2

> After taking his wallet, about $100 from the register, and some Schlitz malt liquor, the men drove off in a maroon Grand Am Pontiac car.
>
> The store owner called 911, and approximately ten to fifteen minutes later Detective Michael Early arrived and interviewed him about the robbery. Early put out a "BOLO" (be on the look out) for the robbers' maroon Grand Am. After hearing the BOLO, Detective Robert Evans stopped two black males in a maroon Grand Am. Evans instructed the driver, Bugg, to put his hands up. Bugg bent down, tucked something into his waist and bolted from the car with a gray sweatshirt in his hands.
>
> Evans chased Bugg and temporarily lost sight of him, but then caught up to him hiding in the woods, lying down with his hands tucked into the sweatshirt. Bugg ignored Detective Evans's three requests for him to put his hands up. Evans shot at Bugg, who put his hands up immediately.
>
> After apprehension, Bugg asked Evans-"Why did you shoot at me? I didn't have a gun. I left it in the car." To which Evans replied "Well I thought you had a gun." A gun was discovered near Bugg's hiding spot. In the car were another gun, two masks, and Schlitz malt liquor. Finally, Bugg and the passenger each had $49.

105 Fed.Appx. 25, *26, 2004 WL 1491643, *1. According to the Presentence Investigation Report ("PSR"), the gun found near Petitioner's hiding spot was a .38 caliber pistol and the gun found in the Grand Am was a Lorcin .380 semi-automatic pistol. (PSR at ¶¶ 10-12). Shorpshire was also apprehended near the scene of the stop. After being transported to the police department and questioned, Shropshire admitted to the robbery and implicated Petitioner. (*Id.*).

Prior to Petitioner's sentencing hearing, the PSR was prepared and provided to the parties. According to the PSR, Petitioner qualified as a career offender under USSG § 4B1.1 and his total offense level was 32. (PSR at ¶ 33). With a criminal history category of VI, Petitioner's guideline range as to Counts One and Three was 210 to 262 months. (*Id*. at ¶ 78). Counts Four and Five were merged for the purposes of sentencing. Petitioner's guideline range for Counts Four and Five was a statutory mandatory consecutive 84 months, resulting in an effective guideline range of 294 to 346 months. (*Id.*). The Court chose a sentence of 324 months, which was in the middle of the effective

guideline range. (Crim. Court File No. 103).

On November 1, 2005, Petitioner timely filed the present motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. (Crim. Court File No. 125; Court File No. 1.) Petitioner now raises three claims of ineffective assistance of counsel in his Petition and Memorandum (Court File Nos. 1, 2).[4] For the reasons stated below, these claims provide no basis to grant his Petition.

## II.   STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court that imposed the sentence to vacate, correct, or set aside that sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles,* 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States,* 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000).

Where a constitutional error is alleged, in order to obtain relief under § 2255 the record must

---

[4]As footnote one on page four of the Government's response points out, the Petition on its face identifies four claims for relief, but the supporting memorandum addresses only three of these claims (Court File Nos.1, 2). The first and third claims relate to Counsel's alleged failure to investigate and challenge the predicate state felony drug convictions, and thus were properly consolidated in Petitioner's memorandum. The Government accordingly considered the Petition to raise three claims. The Court agrees with this conclusion and will consolidate the discussion of Petitioner's first and third claims in this memorandum.

4

reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 1721-22, 123 L. Ed. 2d 353 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Riggs v. United States*, 209 F.3d 828, 831 (6th Cir.), *cert. denied*, 531 U.S. 884, 121 S. Ct. 200, 148 L. Ed. 2d 140 (2000); *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

Petitioner's claims rest on allegations of ineffective assistance of counsel. The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

5

466 U.S. at 687, 104 S. Ct. at 2064. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690, 104 S. Ct. at 2066. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S. Ct. 2574, 2586, 91 L. Ed. 2d 305 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691, 104 S. Ct. at 2066. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694, 104 S. Ct. at 2068. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient

> showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697, 104 S. Ct. at 2069.

## III.  DISCUSSION

Petitioner asserts three grounds upon which he argues the Court should vacate, set aside, or correct his sentence. Petitioner contends he was denied effective assistance of counsel when his attorney : (1) failed to object to the PSR's categorization of Petitioner as a Career Offender and failed to raise the issue on appeal; (2) failed to argue the facts relating to Petitioner's prior convictions unconstitutionally increased his sentence; and (3) failed to object to the sufficiency of evidence on the Hobbs Act Offense (Count Three). The Court will discuss each of these arguments in turn.

### A.  Failure to Object to "Double" and "Triple" Counting Petitioner's Prior Convictions

Petitioner first argues counsel was ineffective in failing to argue Petitioner's prior convictions were erroneously and unconstitutionally used to increase his offense level, his criminal history points and consequentially, his criminal history category. Petitioner alleges this constitutes impermissible "double" or "triple" counting. (Court File No. 2 at 3-5). For the following reasons, Petitioner's claim is incorrect and lacks merit.

The Court's use of a defendant's prior felony conviction(s) in calculating both the offense level and the criminal history category does not constitute impermissible double counting. *United States v. Crace*, 207 F.3d 833, 838 (6th Cir. 2000)("[t]he district court's use of [defendant]'s prior

drug convictions to establish the offense level of his positive drug screen and his criminal history category was not impermissible double counting"). In *Crace*, the Sixth Circuit pointed out "the prior convictions were used to establish both the wrongfulness of the instant offense and the defendant's potential for recidivism." *Id*. Since the base offense and criminal history category are "intended to reflect different concerns," the Sixth Circuit held the district court in *Crace* properly considered the defendant's prior convictions in its sentencing. The same logic applies to the facts of Petitioner's case and, as such, the Court did not engage in impermissible double counting in using Petitioner's prior convictions to establish the offense level and criminal history category.

As part of this same argument, Petitioner "argues that by §4B1's [sic] 'Career Offender' being used, not only was that impermissible 'double counting', it instead is actually 'triple counting'." As the Government's Response points out, this same argument has been rejected by the Sixth Circuit and the United States Supreme Court. *United States v. LaBonte*, 520 U.S. 759 (1997);*United States v. Branham*, 97 F.3d 835, 848-49 (6th Cir. 1996). In *Branham*, the Sixth Circuit invalidated Amendment 506 to USSG § 4B1.1 in which the Sentencing Commission sought to ameliorate alleged double counting where a prior conviction increased the defendant's statutory maximum and also increased the offense level and criminal history. The *Branham* court rejected the double counting argument, finding that "no double enhancement of penalties" existed in the statutory and Guideline scheme. Congress had directed the Commission to ensure that recidivists "should receive a sentence of imprisonment under the guidelines that is at or near the maximum term authorized by statute," and the "career offender provision, section 4B1.1, implements Congress' mandate [of 28 U.S.C. § 994(h)]." *Id*. at 849 (quoting *United States v. Sanchez-Lopez*, 879 F.2d 541, 559 (9th Cir. 1989)). As a result, the *Branham* court found the Commission's Amendment 506 was

"inconsistent with the mandate of 28 U.S.C. § 994(h) to punish recidivists 'at or near the maximum term authorized,' and therefore is invalid." *Id.*

A few months later, the United States Supreme Court agreed with the Sixth Circuit's reasoning in *Branham* and invalidated Amendment 506 in *United States v. LaBonte*, 520 U.S. 759 (1997). As the Government's Response aptly points out, in response to defendant LaBonte's argument that Amendment 506 "avoids unwarranted double counting" in the career offender provision, the *LaBonte* court stated,

> That argument is entirely beside the point. Congress has instructed the Commission to assure that the sentences of repeat offenders closely track the statutory maximum. The number of steps the Commission employs to achieve that requirement is unimportant, provided the Commission's mechanism results in sentences "at or near" the "maximum term authorized."

520 U.S. at 761. Therefore, the Court finds the application of the career offender provision in Petitioner's case was not impermissible double or triple counting.

As both of Petitioner's claims of double and triple counting are completely without merit, Petitioner's counsel was not deficient in failing to make this argument at the time of Petitioner's sentencing or in the Petitioner's direct appeal nor was Petitioner prejudiced by this omission. As a result, the Court will **DENY** Petitioner's claim for relief on this ground.

### B. Failure to Argue the Facts Relating to Petitioner's Prior Convictions Unconstitutionally Increased Petitioner's Sentence

Next, Petitioner "argues against the current 'unconstitutional law' of *Almendarz-Torrez* [sic], 543 U.S. 224 (1998), which is the very tool used to infringe upon Petitioner's rights." (Court File No. 2 at 5). In this argument, Petitioner seems to argue his counsel was ineffective for failing to argue at sentencing and on direct appeal that *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) conflicts with the United States Constitution, and also asserts his sentence violated the rule

9

in *United States v. Booker*, 543 U.S. 220 (2005). (*Id.* at 5-8). Again, Petitioner's claims are without merit.

"Existing case law establishes that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), does not require the nature or character of prior convictions to be determined by a jury." *United States v. Barnett*, 398 F.3d 516, 524 (6th Cir. 2005). "Moreover, there is no language in *Booker* suggesting that the Supreme Court, as part of its remedial scheme adopted in that case, intended to alter the exception to *Apprendi* allowing district courts to consider the fact and nature of prior convictions without submitting those issues to the jury." *Id.* at 525.

As Petitioner's sentencing range was based solely upon his prior convictions and his career offender status, no Sixth Amendment error occurred. *See Barnett,* 398 F.3d at 524-25 (finding no Sixth Amendment error where defendant was armed career criminal and his guideline range was based solely upon prior convictions). Therefore, he is not entitled to relief under *Apprendi* or *Blakely*.

To the extent Petitioner asserts his *Blakely* claim should now be considered a claim based upon *United States v. Booker*, 125 S. Ct. 738 (2005), and that it was error for the Court to sentence him based upon a guideline range the Court erroneously believed to be mandatory (Petitioner's Memorandum at 7-8), *Booker* provides no basis for relief. The Sixth Circuit has held that *Booker* is a new rule of criminal procedure that does not apply retroactively to provide relief by way of § 2255 for petitioners whose sentences were final before the date of its decision, January 12, 2005. *Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005). As Petitioner's sentence was final on November 1, 2004 when his petitioner for writ of *certiorari* was denied, Petitioner's *Booker* claim is barred.

10

Therefore, Petitioner's second claim is without merit. Petitioner's counsel was not deficient in failing to make this argument at the time of Petitioner's sentencing or in the Petitioner's direct appeal nor was Petitioner prejudiced by this omission. Accordingly, the Court will **DENY** Petitioner's claim for relief on this ground.

### C. Failure to Object to the Sufficiency of the Evidence

In Petitioner's third claim, Petitioner argues he was denied effective assistance of counsel when his attorney failed to object to the sufficiency of the evidence for the Hobbs Act offense. Petitioner states the Government's evidence "did not prove beyond a reasonable doubt that any article of commodity was obstructed or delayed in anyway by the robbery." (Court File No. 2 at 8). In short, Petitioner argues evidence presented to the jury as to the effect on interstate commerce was insufficient for a conviction and his attorney was constitutionally ineffective for failing to raise this argument. Again, this claim is completely without merit.

The Hobbs Act provides "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion ... shall be fined . . . or imprisoned . . . ." *United States v. Davis*, - - - F.3d - - -, 2007 WL 102017 (6th Cir. Jan. 17, 2007)(quoting 18 U.S.C. § 1951(a)). "The law of this circuit has required only a showing of a *de minimis* connection with interstate commerce to satisfy the Hobbs Act." *Id.*; see also *United States v. Gardiner*, 463 F.3d 445, 458 (6th Cir. 2006)(citing *United States v. Chance*, 306 F.3d 356, 373 (6th Cir. 2002)). "No more than a minimal effect on interstate commerce need be shown." *United States v. Brown*, 959 F.2d 63, 67 (6th Cir. 1992). Finally, there is "no requirement [under the Hobbs Act] that there be an actual effect on interstate commerce." *Id.* at 67.

As Petitioner himself admits in his Memorandum, evidence was presented at trial in

11

Petitioner's case that the store he robbed sold goods which had traveled in interstate commerce. (Court File No. 2 at 8-9). This evidence was sufficient to demonstrate the interstate commerce element. Petitioner mistakenly argues the Government was required to prove the goods stolen by Petitioner and Shropshire were goods which had traveled in interstate commerce. As explained above, this is not a correct statement of law.

For the reasons stated above, Petitioner's third argument is completely without merit. Therefore, Petitioner's counsel was not deficient in failing to file a direct appeal, nor was Petitioner prejudiced by the omission. Accordingly, the Court will **DENY** Petitioner's claim for relief on this ground.

## IV. CONCLUSION

For the reasons set forth above, the Court holds Petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED**.

The Court must now consider issues that may arise if Petitioner files a notice of appeal. Section 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion.[5] Section 2255 now incorporates the old habeas procedure of issuing or denying a

---

[5]The Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(a)(3), does not apply to appeals of orders denying § 2255 motions. *Hereford v. United States*, 117 F.3d 949, 951 (6th Cir. 1997); *cf. McGore v. Wrigglesworth*, 114 F.3d 601, 610 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases). Rather, to seek leave to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the $105 filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must seek permission from the district court under Rule 24(a) of the Federal Rules of Appellate Procedure. *Hereford*, 117 F.3d at 952. If the motion is denied, the prisoner may renew the motion in the appellate court.

certificate of probable cause, now renamed a certificate of appealability. No § 2255 petitioner may appeal without this certificate. District judges may issue certificates of appealability under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which codifies the standard for issuing a certificate of probable cause originally articulated in *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394, 77 L. Ed. 2d 1090 (1983). *See Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997). "A certificate of probable cause requires petitioner to make a 'substantial showing of the denial of [a] federal right.'" *Barefoot*, 463 U.S. at 893, 103 S. Ct. at 3394. *See also* 28 U.S.C. § 2253(c)(2). The standard is perhaps best phrased as follows:

> In requiring a "question of some substance," or a "substantial showing of the denial of [a] federal right," obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are "adequate to deserve encouragement to proceed further."

*Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980) (quoting *United States ex rel. Jones v. Richmond*, 245 F.2d 234 (2d Cir.), *cert. denied*, 355 U.S. 846, 78 S. Ct. 71, 2 L. Ed. 2d 56 (1957)).

In this case, Petitioner's claims are clearly without merit, and he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore **DENIES** a certificate of appealability.

Fed. R. App. P. 24(a) further requires the district court to certify in writing whether an appeal would be taken in good faith. For the same reasons the Court denies a certificate of appealability, the Court determines any appeal in this case would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Fed. R.App. P. 24(a), any appeal in this matter by Petitioner is not taken in good faith, and he may not proceed on appeal *in forma pauperis*. *United States v. Atkins*, 171 F. Supp. 2d 769 (W.D. Tenn. 2001). No certificate of appealability will issue as Petitioner has not

made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**